UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BENJAMIN A. GOFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:12-0713 |
| ) | Judge Sharp |
| BROOK-HOLLOW CAPITAL, LLC ) | |
| and BROOK-HOLLOW FINANCIAL, ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

In this employment contract dispute, removed from state court, Defendants have filed a Motion to Dismiss (Docket No. 7). That Motion has been fully briefed by the parties and, for the reasons that follow, will be denied.

## I. FACTUAL BACKGROUND

According to the allegations in the Complaint, which the Court accepts as true for present purposes, the basic background facts are as follows:

Plaintiff Goff is a citizen of Tennessee residing in Brentwood. Defendant Brook-Hollow Capital is a limited liability company incorporated in Delaware, with a principal place of business in Chicago, Illinois. Defendant Brook-Hollow Financial LLC, too, is a limited liability company incorporated in Delaware, with a principal place of business in Chicago.

In December 2010, Brian Michaels, the general counsel of Brook-Hollow Financial approached Plaintiff about a business idea related to litigation financing. This led to a conference call between Plaintiff, Michaels, and B. J. Etscheid, a principal of Brook-Hollow Financial. Plaintiff

1

was to guide the startup and promote sales of the new company, while Michaels and Etscheid were to provide capital and connections to sell the service. During the conversation, Plaintiff's compensation was discussed, but not settled.

Basically, Brook-Hollow Capital was to provide immediate money to attorneys who were parties to a structured settlement, whereby Brook-Hollow Capital would loan the attorneys the amount of the structured settlement minus a fee. The money paid to the attorneys would be filtered through a series of companies, including Brook-Hollow Financial which was to make money by selling Brook-Hollow Capital's services.

From December 2010 until April 2011, Plaintiff drafted the business plan and provided policies and procedures for Brook-Hollow Capital. He also traveled extensively, attended seminars, made presentations, and met with numerous clients on behalf of the company.

In February 2011, Plaintiff began making inquiries into his compensation for the services he provided to Brook-Hollow Capital. After some negotiation, Plaintiff and Brook-Hollow Capital entered into an Executive Employment Agreement.[1] Among other things, the Agreement stated that Goff would be paid a base salary of $180,000 annually, plus an incentive bonus of at least 10% of net profits.

On December 27, 2011, Etscheid, as a principal of Brook-Hollow Financial, sent Goff an e-mail indicating that funds did not exist for the January 1, 2012, payroll for Brook-Hollow Capital. On January 19, 2012, Plaintiff was telephonically informed that his employment was terminated immediately, ostensibly due to financial problems. The following day, Etscheid, acting as a

---

[1] The Agreement was for a three year term, subject to the right to terminate for cause. If no cause existed for termination, Brook-Hollow Capital agreed to pay a specified severance.

principal of Brook-Hollow Financial, sent Plaintiff a separation agreement that sought to waive his agreed-upon severance in exchange for $5,000.

Plaintiff refused to sign the proposed separation agreement. After he attempted to negotiate his separation and threatened legal action, Plaintiff was "un-terminated, . . . long enough to provide 30 days notice of termination for cause, as required by the Employment Agreement, citing contrived reasons for the termination." (Docket No. 1-1, Complaint ¶ 42).

Based upon these events, Plaintiff filed suit in the Chancery Court for Williamson County, Tennessee. He alleges breach of the employment agreement by Brook-Hollow Capital; tortious interference with that agreement by Brook-Hollow Financial; fraud in the inducement; and civil conspiracy.

## II. APPLICATION OF LAW

Defendants move to dismiss on two primary grounds. They seek dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Alternatively, they request dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

"Personal jurisdiction over an out-of-state defendant arises from certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Air Prod. & Controls v. Safetech Int'l, Inc., 503 F.3d 544, 549 (brackets in original, quoting, Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general." Id. at 540-50. "General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the

3

defendant." Miller v. AXA Winterthur Ins. Co., 694 F.3d 675, 678-79 (6th Cir. 2012). "Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." Id. at 679.

"'The plaintiff bears the burden of establishing that [personal] jurisdiction exists." Carrier Corp. v. Outokumpu Oyi, 673 F.3d 430, 449 (6th Cir. 2012) (citation omitted). "'In the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" Id.

In support of their position that personal jurisdiction is lacking, Defendants rely heavily on the declaration of Benjamin Etscheid. In his declaration, Etscheid confirms that both Brook-Hollow Financial and Brook-Hollow Capital are Delaware limited liability companies with their principal place of business in Chicago, and states that the former is the manager and majority owner of the latter. He claims that neither entity has transacted business in Tennessee, is not registered to do business in Tennessee, has not appointed an agent for service of process in Tennessee, has no office or place of business in Tennessee, has no real property or clients in Tennessee, and that Brook-Hollow Financial has had no employees in Tennessee.

Etscheid also asserts that neither entity advertises, markets or offers services in Tennessee. Additionally, according to Etscheid, neither entity (or any of their representatives) ever went to Tennessee to meet Plaintiff or discuss the possibility of an employment relationship with him; rather Plaintiff traveled to Chicago to discuss his employment. Etscheid further contends that neither entity suggested, let alone required, that Plaintiff live in Tennessee. Finally, Etscheid states that Brook-Hollow Capital made the decision not to do business in Tennessee and, in fact, declined to apply to become an Industrial Loan and Thrift in Tennessee.

In response to Defendants' personal jurisdiction allegations, Plaintiff has submitted his own declaration. In that declaration, Plaintiff states, among other things, that:

- When he was first approached by Michaels about the business idea related to litigation financing, he spoke with Michaels by telephone from Tennessee, participated in the subsequent conference call with Michaels and Etscheid from Tennessee, and signed the Employment Agreement in Tennessee;

- Compensation from Brook-Hollow Capital was received in Tennessee, and to the best of his knowledge, payroll taxes for his employment were paid in Tennessee on a quarterly basis;

- He was the only full-time employee of Brook-Hollow Capital, and, under the Employment Agreement held the titles of Chief Executive Officer and President, with sole responsibility for its operations;

- His office was located in his home in Brentwood and he marketed the products of Brook-Hollow Capital and Brook-Hollow Financial from that location. From there, he also hosted online video conferences with Brook-Hollow Capital and Brook-Hollow Financial personnel, and communicated extensively by telephone and email from there with those entities, and with potential customers and clients. He also utilized a credit card with his home office as the billing address for purchases on behalf of Brook-Hollow Capital and Brook-Hollow Financial, for which he was reimbursed by those entities;

- He marketed Brook-Hollow Capital and Brook-Hollow Financial to attorneys in Tennessee (including "multiple Nashville attorneys," and the Tennessee Association for Justice), kept the Brook-Hollow entities informed of that activity, and was never instructed by either not to market in Tennessee;

- Although Brook-Hollow Capital was not a Tennessee Industrial Loan and Thrift, the Brook-Hollow entities were permitted to market their products in Tennessee, and, based upon his advice, made the decision to apply for licensing once Tennessee customers were identified;

- Prior to his termination only one sale was completed, and that was to an attorney in Massachusetts. That sale included Brook-Hollow Financial acting as the exclusive broker of the corresponding loan from Brook-Hollow Capital, and all underwriting, invoicing and collection in regard to the loan were performed in Tennessee.

(Docket No. 13, Goff Decl. ¶¶ 4-17).

Obviously, the parties have a vastly different view of Brook-Hollow Financial's and Brook-

Hollow Capital's connections to Tennessee. Where, as here, however, when a court decides the personal jurisdiction issue on the pleadings and the declarations that have been filed, the burden on a plaintiff is "'relatively slight,'" and the facts are construed "'in a light most favorable'" to him. Carrier Corp., 673 F.3d at 449 (citation omitted). In light of this burden, and given that "'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal,'" Estate of Thompson v. Toyota Motor Corp., 545 F.3d 357, 360 (6th Cir. 2008), Defendants' motion to dismiss based upon lack of personal jurisdiction must be denied.

While there are some allegations that suggest Brook-Hollow Capital had continuous and systematic contact with Tennessee given Plaintiff's presence in this state, that is an issue which the Court need not decide in light of the fact that specific jurisdiction clearly exists over both Defendants.

"For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state's long-arm statute, and constitutional due process." Miller, 694 F.3d at 679. However, "Tennessee's long-arm statute has been consistently construed to extend to the limits of federal due process and, therefore, the two inquiries are merged, and the court need only determine whether exercising personal jurisdiction over [Plaintiff] here is consistent with federal due process requirements." First Response, Inc. v. TMC Serv., Inc., 2013 WL 5434712 (M.D. Tenn. Sept. 27, 2013) (citing, Bridgeport Music, Inc. v. Still N The Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003)).

The Sixth Circuit has long-employed a three part test for determining whether specific jurisdiction may be exercised consistent with due process. First articulated in S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir.1968), that test is as follow:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Id. at 381. Where the first two prongs are met, "'an inference or reasonableness arises,'" and, thus, it will only be in the unusual case where the substantial connection requirement is also not met. Schneider v. Hardesty, 669 F.3d 693, 701 (6th Cir. 2012) (citation omitted).

"It is often repeated that the first prong—purposeful availment—is the '*sine qua non* for *in personam jurisdiction*.'" Air Prod. & Controls, 503 F.3d at 550 (citation omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" Id. at 551 (quoting, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

Defendants argue that "[t]he threshold issue for the Court is whether an Illinois-based company purposefully availed itself of the privilege of acting in Tennessee simply by hiring an employee who chose to live in Tennessee and work out of his home." (Docket No. 17 at 1). While this may be one gloss that could be placed on the relationship between the parties – a gloss that would suggest a random or fortuitous connection with Tennessee – Plaintiff paints a much different picture.

According to Plaintiff, he was solicited by Brook-Hollow Financial to aid in developing a start-up company, a solicitation that was made to him in Tennessee. Thereafter, the parties agreed to enter into an Employment Agreement, and Plaintiff became more than a mere employee of Brook-Hollow Capital. Rather, he was the President and Chief Executive Officer of the company who,

7

with Defendants' full knowledge and without objection, operated the business out of his home office in Tennessee. From there, he had contact via telephone and email with Etscheid, Michaels and others at the Brook-Hollow entities, and it was from his home that he made purchases for both entities, and tried to market their products. Additionally, Plaintiff claims that he made multiple sales pitches in Tennessee for the litigation financing products, again with Defendants' knowledge. When things soured, it was Etscheid, acting on behalf of Brook-Hollow Financial, who reached out to Plaintiff in Tennessee to inform him that there was no money for payroll, and it was Etscheid who sent the Separation Agreement to Plaintiff in Tennessee.

If, the Sixth Circuit "[h]as previously held that purposeful availment may exist when a defendant makes telephone calls and sends facsimiles into the forum state and such communications form the basis of the action,'" Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005), then Brook-Hollow Financial and Brook-Hollow Capital certainly meet the purposeful availment prong under the facts alleged by Plaintiff. Their contact with this state can hardly be said to have been random or fortuitous. See, Lak, Inc. v. Deer Creek Enter, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting, Burger King, 471 U.S. at 473) ("The Supreme Court has emphasized, with respect to interstate contractual obligations, that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities.'").

The facts presented by Plaintiff also meet the "arising from" prong. The standard for finding this factor is "lenient," and "'[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." Scotts Co. v. Aventis, S.A., 145 Fed. Appx. 109, 115 (6th Cir. 2005) (quoting, Southern

8

Mach., 401 F.2d at 384 n.29).

The Employment Agreement at the heart of this dispute is between Brook-Hollow Capital and a Tennessee resident who was in Tennessee when he signed the agreement, resided in this state during the entire time that he was employed by Brook-Hollow, and did most of his work from his home office in Brentwood. His compensation was received in Tennessee, and payroll taxes were paid in Tennessee. See, McKee v. Meltech, Inc., 2011 WL 1770461 at *3 (W.D. Tenn. May 9, 2011) ("An employment contract performed by the plaintiff in the forum state with the 'knowledge and acquiescence' of the defendant provides sufficient minimum contacts to make the defendant subject to personal jurisdiction in the forum state"); Carroll v. Blumaq, 2009 WL 3784608 at *2 (E.D. Tenn. Nov. 10, 2009) (both general and specific jurisdiction existed where company opened and staffed a branch office, rented office space, advertised the business in Tennessee, and causes of action were directly related to the employment in Tennessee).

As noted, the third factor, a "substantial connection," is presumed upon the showing of the first two factors. Regardless, in determining whether a "substantial connection" exists, a court should consider various factors, "including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." Intera, 428 F.3d at 619.

No doubt, some burden will be placed on Defendants in having to litigate in an out-of state forum, but this will be true in many diversity cases and, standing alone, is not sufficient to prohibit the exercise of personal jurisdiction. See, Schneider, 669 F.3d at 704 (while Utah resident who solicited Ohio resident to participate in an investment program would be burdened by defending the matter in Ohio, that burden alone did not "create[] an 'unusual case.'"). Moreover, Tennessee "has

9

an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents, and requiring [Plaintiff] to litigate this dispute in [Illinois or Delaware] would impose a substantial burden on him." Id. Finally, there has been no showing that Illinois or Delaware have a greater interest or can ensure a more efficient resolution of the controversy.

Based upon the foregoing, the Court finds that there are sufficient connections between both Defendants and Tennessee so as to satisfy the due process clause. In so ruling, the Court acknowledges Defendants' argument that the relationship between Brook-Hollow Financial and Tennessee may be more attenuated but, as noted, Plaintiff alleges that he was doing work for both in Tennessee, and, more germane to the specific dispute about the Employment Agreement, that Michaels, Brook-Hollow Financial's general counsel solicited him, and that Etscheid , acting as a principal of Brook-Hollow Financial, informed him of the lack of money to meet payroll, and sent him the separation agreement.

Additionally, Plaintiff claims in his declaration that "[t]he product of Brook-Hollow Capital and Brook-Hollow Financial were marketed together as a package," Brook-Hollow Capital did not have a separate marketing department, both entities were managed as one company by Etscheid and others, all fees were controlled by Etscheid and Dan McCarthy (another Brook-Hollow Financial principal), and monies were frequently moved between the two Brook-Hollow entities to cover payroll and other expenses.

The Sixth "[C]ircuit has adopted the alter-ego theory of personal jurisdiction, which 'provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction.'" Carrier Corp., 673 F.3d at 450-51. Here, again,

the Court must consider the "pleading and supporting affidavits in [Plaintiff's] favor," id. at 451, and, having done so, finds further reason to conclude that there is personal jurisdiction over Brook-Hollow Financial.

## B. **Motion to Dismiss for Failure to State a Claim**

As a preliminary matter, Defendants move to dismiss because the Employment Agreement states that it only becomes effective upon signing, but Plaintiff's signature does not appear on the agreement attached to the Complaint. That omission has been rectified by the filing of a signed copy of the agreement, and, while Etscheid claims in a Second Declaration that Brook-Hollow Capital never received a signed copy of the Employment Agreement and was unaware that Plaintiff had signed a copy, that is not an assertion which can be addressed on the pleadings.

Defendants next move to dismiss the intentional interference claim. Under Delaware's law,[2] "the elements of a claim for tortious interference with a contract are: '(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury.'" Bhole, Inc. v. Shore Invest. Inc., 67 A.3d 444, 453 (Del. 2013) (citation omitted). "To establish tortious interference with contract rights by a defendant corporation, the non-breaching party must show that the corporate defendant 'was not pursuing in good faith the legitimate profit seeking activities of [its] affiliated enterprise [ ]' that was a party to the contract." Id. (brackets in original). "Moreover, 'there can be no non-contractual liability of the affiliated corporation . . . unless the plaintiff pleads and proves that the affiliate sought not to achieve permissible financial goals but sought maliciously or in bad faith to injure

---

[2] The Employment Agreement contains a choice of law provision which states that disputes are to be governed in accordance with the laws of Delaware.

plaintiff.'" Id.

Although Delaware's substantive law may control this dispute, Rule 8 of the Federal Rules of Civil Procedure governs the sufficiency of the pleadings for purposes of Rule 12(b)(6). See, Beal ex. rel. Putnam v. Walgreens Co., 408 Fed. Appx. 898, 900 (6th Cir. 2010) (in diversity action, state's law applies to substantive issues, but federal procedural law in the form of Rule 56(c) rulings on motions for summary judgment); Dunbar v. Wells Fargo Bank, NA, 709 F.3d 1254, 1257 (8th Cir. 2013) (citation omitted) ("'We apply federal pleading standards – Rules 8 and 12(b)(6) – to the state substantive law to determine if a complaint makes out a claim under state law'"); Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003) ("The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.").

Rule 8 merely requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Those requirements are met in regard to the intentional interference claim.

Plaintiff specifically alleges that Brook-Hollow Capital had a contractual relationship with Plaintiff of which Brook-Hollow Financial was aware, that Brook-Hollow Financial through its principals Etscheid and Daniel intended to cause Brook-Hollow Capital to breach the contract, and that Plaintiff was harmed by that action. It is not a leap for this Court, "informed by its 'judicial experience and commonsense,'" to "'draw the reasonable inference,'" Keys v. Humana, Inc., 684 F.3d 605, 610 (6th Cir. 2012) (citation omitted), that those principals did so for the benefit of Brook-

Hollow Financial, and not in the business interests of Brook-Hollow Capital.

Finally, Defendants move for dismissal of the fraud and civil conspiracy claims. They argue that, under Delaware law, Plaintiff's fraud claim is subsumed by his breach of contract claim, and, since a civil conspiracy claim is not self-standing and is linked to the fraud claim, it, too, is subject to dismissal.

It is true that the general rule in Delaware is that "where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort," and that "'[a] breach of contract claim cannot be bootstrapped into a fraud claim merely by adding the words fraudulently induced or by alleging that the contracting parties never intended to perform.'" Greenstar, LLC v. Heller, 934 F. Supp.2d 672, 696 (D. Del. 2013) (citation omitted, collecting cases). It is also true that "[c]ivil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong," meaning that "if plaintiff fails to adequately allege the elements of the underling claim, the conspiracy claim must be dismissed." Kurado v. SPJS Holdings, LLC, 971 A.2s 872, 892-93 (Del. Ch. 2009).

However, Plaintiff's claim, fairly construed, is not a fraud claim arising from the alleged breach of a contract, but a fraud in the inducement of the contract claim. "'[F]or a contract to bar a fraud in the inducement claim, the contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract,'" Korac v. QxC Comm., Inc., 286 F.R.D. 263, 265 (D. Del. 2012) (citation omitted), something that is not argued by Defendants. See, In re Nortel Networks, Inc., 2011 WL 1100983 at *6 (D. Del.

2011) (citation omitted) (the "gist of the action" doctrine "'precludes a tort claim which essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract,'" but "'[a]n exception to the doctrine exists where the contract is collateral to primarily tortious conduct.'"). It may be that Plaintiff cannot establish a tort independent of the contract, but that is an issue for another day, as the Court will not dismiss the fraud in the inducement and civil conspiracy claims on the pleadings.

### III. CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss will be denied. An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE